UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Timothy A. Rice )<br>    a/k/a Timmy Allen Rice, )<br>)<br>                      Petitioner, )<br>    v. )<br>)<br>M. L. Rivera, Warden, )<br>)<br>                      Respondent. )<br>_____ ) | C/A No.: 2:08-1390-GRA<br><br>**ORDER**<br>(Written Opinion) |

This matter is before the Court to review the magistrate judge's Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.02(B)(2)(c), D.S.C., filed August 4, 2008. The magistrate recommends that the court grant the warden's motion to vacate Count 5 of the Indictment under 18 U.S.C. § 924(c)(1) since the petitioner and the respondent agree that the facts cannot sustain a conviction for the crime charged. For the reasons stated herein, this Court declines to adopt the Report and Recommendation, denies the Government's motion to vacate, and denies the petitioner's request to vacate.

On February 1, 2008, the petitioner filed a *pro se* application under 28 U.S.C. §2241 for Writ of Habeas Corpus attacking the validity of his 18 U.S.C. § 924(c)(1) conviction based on the Supreme Court ruling in *Bailey v. United States*, 516 U.S. 137 (1995). The petitioner requested an order from this Court vacating the judgment imposed under 18 U.S.C. § 924(c)(1). The respondent agreed and made motion upon

this Court to vacate the conviction on July 9, 2008. The respondent argues that the petitioner is entitled to have the sentence vacated because "the facts and evidence do not support a conviction under §924(c)(1)." (Respondent's Answer p.7).

Petitioner brings this claim *pro se.* This Court is required to construe *pro se* pleadings liberally. Such pleadings are held to a less stringent standard than those drafted by attorneys. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). This Court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982).

The magistrate makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* In the absence of specific objections to the Report and Recommendation, this Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198 (4th. Cir. 1983). Petitioner did not file any objections as he

agreed with the recommendation of the magistrate judge and the respondent that he was entitled to have the sentence vacated.

Although the magistrate recommends granting the motion, he does so only because the parties agree on the motion to vacate the conviction. However, the Court has examined the record and case law and has determined that there is sufficient evidence to uphold a conviction under the 18 U.S.C.924(c)(1) (1990) as clarified by *Bailey*. The petitioner is unable to establish actual innocence under the statute.

A § 2255 motion is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A federal prisoner may proceed under § 2241 only if the remedy provided by § 2255 is inadequate or ineffective to test the legality of his detention. *See* 28 U.S.C. § 2255; *In re Dorsainvil*, 119 F.3d 245, 249-51 (3d Cir.1997). "A § 2255 motion is inadequate or ineffective only where the petitioner demonstrates that some limitation of scope or procedure would prevent a § 2255 proceeding from affording him a full hearing and adjudication of his claims." *Cradle v. United States ex rel. Miner*, 290 F.3d 536, 538 (3d Cir.2002). Section 2255 is inadequate or ineffective, in the "rare situation" where an intervening change in law makes the crime for which the petitioner was convicted "non-criminal." *Okereke v. United States*, 307 F.3d 117, 120 (2002). Construing the pleadings liberally, the petitioner argues that the change in the law makes his sentence non-criminal and is therefore entitled to relief. The Court finds that he may proceed under § 2241.

The petitioner was convicted of selling crack and crack cocaine out of his home in Spartanburg, SC for a period of approximately three years. He was the leader of a large crack distribution ring. He cooked cocaine to make it in the rock form of crack cocaine, packaged the drugs, distributed the drugs, and gave the drugs to other dealers. The government had evidence that the drug activity continued after the grand jury indictment when the petitioner was released on bond.

The trial transcripts reveal the following relevant facts: the petitioner was arrested when police officers entered his home during the execution of a search warrant on May 3, 1990. (Tr. 1-107). When the officers entered the petitioner's home, Officer Newman attempted to open the door to the bedroom. The door was difficult to open because the doorjamb was reinforced with wood nailed into the inside of the door so that the doorjamb would not move. It took the officer a while to kick the door in, (Tr. 1-109; Tr. 1-110) but once the officer got the door open, a women and children ran out the room screaming. (Tr. 1-108). This woman was the petitioner's girlfriend, Ms. Oswald. The petitioner's girlfriend stated that "[w]hen they was breaking in, I was screaming." (Tr. 2-29). The officer stated in his testimony that the petitioner was in the bed and reached for a loaded nine millimeter gun that was lying in the open on the bedside table when the officer entered the room. In response to the movement towards the gun, the officer told the petitioner to back away from the gun or he would kill him. The officer was armed with a shotgun. The petitioner rolled over in the bed and pulled away from the gun. Officer Rick Porter seized the gun

after Officer Newman directed him to do so.  The gun was loaded with a full clip of ammunition.  (Tr. 1-108).

After the police entry team secured the premises, Officer Porter entered the bedroom and seized money from a large locked safe.  The money was in denominations of twenties, tens, fives and ones.  (Tr. 1-118).  There was about eighteen thousand dollars in cash in the house.  (Tr. 1-119).

A witness in the case, Mr. Robinson, was a drug dealer for the petitioner.  He testified that he went into the petitioner's house and saw crack on the table in bags.  He stated that he saw a large quantity of drugs in the house and did not stay long for fear that the police would show up at any time.  (Tr. 1-42).  He also gave the petitioner drug proceeds from drugs provided to him at the petitioner's direction on one occasion.  (Tr. 1-64).

Drugs were found on the property at Beacon Street where the petitioner lived.  (Tr. 1-86 and 1-90).  The petitioner's brother would put drugs out in the yard at his direction for pickup by lower level dealers.  (Tr. 1-98).  The petitioner did not keep drugs inside the house, he kept them hidden outside the house.  (Tr.1-100).  The substances found outside were tested and found to be illegal narcotics.  (Tr. 1-133)

The petitioner provided drugs for many dealers in town.  Mr. Smith and his brother purchased cocaine from the petitioner with the intent to cook it into the form of crack cocaine to sell it later.  (Tr. 1-151to 1-173).  Mr. Gist approached the petitioner at the petitioner's home about selling crack for him.  (Tr. 1-198).  The

petitioner directed another individual to get two bags with at least 55 crack rocks in each bag and give it to Mr. Gist. After Mr. Gist sold the drugs, he would give the money to one of the co-defendants in the petitioner's case. (Tr. 1-199).

The petitioner was tried for conspiracy to possess and distribute crack cocaine, possession with intent to distribute crack cocaine, maintaining an establishment for the purpose of distributing cocaine, and using or carrying a firearm during a drug trafficking crime. A jury convicted the petitioner on October 17, 1990 on all counts. The petitioner was sentenced on February 7, 1991 to life on the conspiracy to possess with intent to distribute crack cocaine, 480 months on possession with intent to distribute crack and 240 months on maintaining an establishment for the purpose of distributing cocaine which were to be served concurrently. The petitioner was sentenced to sixty months for the use and or carrying of a firearm during a drug trafficking crime which was to be consecutively to the other sentences imposed. On October 1, 1997, the Court reduced the sentence from life to 360 months on the conspiracy charge. The other charges were unaffected. This reduced the total sentence to 420 months.

At issue in this petition is the validity of the conviction under 18 U.S.C. § 924(c)(1). At the time, the statute imposed a minimum 5-year minimum term of imprisonment upon a person who "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm." The petitioner and the respondent contend that the Supreme Court in *Bailey v. U.S.* (516 U.S. 137 (1995))

clarified the statute in defining the word "use", and under the clarified statute, the evidence does not support a conviction under the statute. However, the respondent failed to fully analyze relevant case law and therefore erred in his argument.

The Supreme Court in *Bailey* clarified the requirements to sustain a conviction under the word "use" in § 924(c)(1). The Supreme Court stated that "§ 924(c)(1) requires evidence sufficient to show an active employment of the firearm by the defendant." *Bailey*, 516 U.S. at 505. There must be a showing of more than mere possession or presence. *Id.* at 506. Congress articulated two types of prohibited conduct in the statute, the use or carrying, and the Supreme Court treated each word as having a different meaning. "A firearm can be used without being carried . . . and a firearm can be carried without being used." *Id.* at 507. The Court stated that the active employment required under the word "use" included such activities as "brandishing, displaying, bartering, striking with, and most obviously firing or attempting to fire a firearm. . . . that even an offender's reference to a firearm in his possession could satisfy" the statute. *Id.* at 508. The Supreme court stated "the silent but obvious and forceful presence of a gun on a table can be a 'use'." *Id.* The Court noted that the presence of a firearm without more was not enough to trigger liability under the statute. *Id.* at 509 ("Placement for later active use does not constitute 'use'."). However, they also stated that the "'carry' prong . . . brings some offenders who would not satisfy the 'use' prong within the reach of the statute." *Id.* at 509. The two words in the statute have distinct meanings and a conviction may

be sustained under either. The Supreme Court did not have opportunity to clarify the word "carry" in *Bailey*. In *Bailey*, the court of appeals did not consider liability under the "carry" prong, and therefore the Supreme Court remanded the case for consideration of the "carry" prong for basis of upholding the convictions.

In *United States v. Hall*, the Fifth Circuit analyzed the "carry" prong in the statute. The court held that to sustain a conviction under the "carry" prong, the evidence "must show that the firearm was transported by the defendant, or was within his reach, during and in relation to the predicate crime." *United States v. Hall*, 110 F.3d 1161 (5th Cir. 1997). The court stated that the word "carry", like the word "use", must also mean more than mere possession. For a firearm outside an automobile, the court stated that for the firearm to be "carried", it must be within a defendant's reach during the commission of an offense. *Id.* at 1162. To "carry" a gun under this statute means that there be an immediate ability to exercise dominion or control over a gun and that it be within reach. *Id.* In *Hall*, there was no evidence to sustain a conviction under "carry" because Hall was across the room from the gun that sat a few feet away from the table where the drugs were located. The gun was not within his reach. The other defendant in *Hall* was in another room with a gun as well but he had zipped himself up in a suitcase to hide and was away from the gun. *Id.* The key to "carry" is the ability to immediately reach the firearm during or in furtherance of the predicate crime.

The Fourth Circuit has held that evidence indicating that a firearm was immediately or readily available to the defendant clearly would satisfy the possession necessary to constitute "carrying." *See United States v. Hayden*, 85 F.3d 153, 162 (4th Cir.1996). In *Fleming v. Olson*, (No. 97-cv-0660, 1998 WL 34093762 (S.D.W.Va. Oct. 14, 1998)), the court held that a loaded gun in the house used as a location to traffic drugs used for protection of drugs, person, and money was sufficient for a reasonable jury to sustain a conviction under Section 924 as defined by the Supreme Court in *Bailey*.

A firearm is carried "in relation to" a drug trafficking offense if it has "some purpose or effect with respect to the drug trafficking crime" and if its presence was not "the result of accident or coincidence." *Smith v. U.S.*, 508 U.S. 223, 238 (1993). The firearm must facilitate, or **potentially facilitate**, the drug trafficking offense. *Id.* For example, if a firearm is carried for protection or intimidation, it is carried "in relation to" the drug trafficking offense within the meaning of § 924(c)(1). *See United States v. Stockstill*, 26 F.3d 492, 496 (4th Cir.), cert. denied, 513 U.S. 941(Oct 11, 1994) (NO. 94-5918).

In this case, there was sufficient testimony that the petitioner was operating a cocaine distribution ring out of his house. The jury found the petitioner guilty of conspiracy to possess and distribute cocaine. The judgment was appealed and upheld. The Fourth Circuit found that "[t]he evidence that Timmy Rice was involved in a drug conspiracy clearly was sufficient to support the jury verdicts against him. . . ." *United*

*States v. Rice*, 976 F.2d 728, 1992 WL 240686, at *2 (4th Cir. Sept. 29, 1992). The police found drug proceeds in the safe located in the petitioner's house. The petitioner contends that the money came from his proceeds from his pool hall business and a night of gambling. (Tr. 2-44, 2-50). However, the petitioner did not produce any tax returns or accounting records from the pool hall to corroborate his testimony. (Tr. 2-50). Drugs were found outside a co-conspirator's home across the street from the petitioner's home. The police also found a small amount of marijuana on the premises. (Tr. 2-49). The petitioner tested positive for cocaine while on bond. (Tr. 2-54). The above facts support the Fourth Circuit's holding that there was support for the petitioner's conviction.

Next, the Court will address the respondent's argument under *Bailey*. The case at hand is easily distinguishable from *Bailey*. The Supreme Court consolidated two cases in *Bailey* to clarify the statute both of which are factually different than this case. It focused on the mere presence of a gun. The gun in one case was found inside a bag locked in a car trunk. In the other case, the gun was found unloaded and holstered locked in a footlocker in the bedroom closet. The guns analyzed under *Bailey* were stored guns. There was no evidence of "active employment" in either case, and as stated above, the carry prong was not analyzed. The gun in the petitioner's case was lying on the bedside table readily accessible in plain view. It was available for ready use at any moment as evidenced by the petitioner's reaching for the gun. This reaching for the gun is analogous to an offender's reference to a firearm in furtherance

of a drug trafficking crime which is a "use" according to the Court. This Court holds that this reaching for the loaded gun in plain view on the bedside table within reach of the petitioner in a house and known for its drug distribution with significant amount of drug proceeds inside is enough to uphold a conviction under the "use" prong of the statute.

The respondent argues that the petitioner was asleep and the reaching for the gun was a reflex reaction. However, this argument cannot stand with the evidence in the record and is irrelevant. Officer Newman stated that when he entered the room, said that the petitioner might have been asleep, but he was not when he entered the room. (Tr. 1-116). Officer Newman stated that it took him a while to get into the room because the door was difficult to open. (Tr. 1-110). With the noise of the officer attempting to kick in the door outside the room, it would be extremely difficult for an individual to sleep through such an event. The petitioner's girlfriend was screaming while the officers were attempting to gain entry to the room by kicking in the door. (Tr. 2-30). The petitioner's girlfriend offered no testimony to support the petitioner's assertion that he did not reach for the gun, although she may not have been in the room at the time. (Tr. 2-27 to 2-37). The only evidence offered that the petitioner did not reach for the gun is his own testimony. There is sufficient evidence to suggest that the petitioner reached for the gun, and this Court finds that this reaching is sufficient to sustain a conviction under the "use" prong.

However, since the petitioner contends that he did not reach for the gun, the Court will also analyze the conviction under the "carry" prong of the statute. The respondent claims that the petitioner "merely possessed a firearm during the execution of the warrant on the premises" and that the reaching was merely in reflex. (Respondent's Answer p. 7). Assuming, arguendo, that the petitioner did not reach for the gun or in the alternative did so in reflex, there is still sufficient evidence to sustain a conviction under the "carry prong." (The Court notes that the petitioner says he did not reach for the gun. (Tr. 2-42).). The petitioner admits he was in the bed next to the gun that was located on the bed side table. In the Fourth Circuit, under *Hayden*, the presence of the gun next to the defendant meets the "readily available" test. The presence of the gun and the sufficiency of testimony that the house was being used as a location for drug distribution is sufficient to uphold the petitioner's conviction under the "carry" prong of the statute as defined by the courts in the Fourth and Fifith Circuits. The reaching for the gun, although it may have been in reflex, is further evidence of the possibility of "potential facilitation" of the firearm during or in relation to the crime. The petitioner had the gun at his disposal in the event he needed to utilize it.

The petitioner "carried" the gun in furtherance of a drug trafficking crime. The petitioner was convicted of conspiracy to possess and distribute cocaine. He was found in his home with a significant amount of money, which from the record, could be deemed proceeds. The respondent claims that they do not know the exact location

of the proceeds within the house which the government feels is an important fact. However, Officer Porter stated he seized the money from the bedroom where the petitioner was located. (Tr. 1-118). Although the record shows the money was in the room with the petitioner, Court notes that the exact location of the proceeds in the house is also irrelevant. The drug proceeds in the house and the gun being within the petitioner's reach is sufficient to find that the petitioner "carried" a gun in furtherance of a drug trafficking crime. The location of the gun was not a result of coincidence. This firearm could have potentially facilitated the crime. A jury could find that it was in the petitioner's home for his protection and the protection of his drugs and drug proceeds. The use or carrying of the gun was "in furtherance" of a drug trafficking crime, as its purpose was for the protection of the petitioner, drugs, and drug proceeds. The petitioner is unable to establish actual innocence or that his activity was not criminal.

This Court holds that there is a factual basis for which to sustain the conviction under the statute. A reasonable jury could convict the petitioner under the statute as clarified by the Supreme Court and the Fifth and Fourth Circuits; therefore, the petitioner's request is denied and the respondent's motion to vacate is denied.

After a thorough review of the record and the case law cited by the petitioner, the court denies the United State's motion to vacate as the facts and evidence is sufficient to sustain a conviction under the statute.

IT IS SO ORDERED THAT the petitioner's request for relief of sentence be denied.

IT IS THEREFORE ORDERED THAT the respondent's motion be DENIED.

**IT IS SO ORDERED**.

_____
G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

Anderson, South Carolina
September   23  , 2008

### NOTICE OF RIGHT TO APPEAL

Pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, Plaintiff has the right to appeal this Order within sixty (60) days from the date of its entry. Failure to meet this deadline, as modified by Rule 4 of the Federal Rules of Appellate Procedure, **will waive the right to appeal.**